1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MORTEZA BAKHTIARI,                          Case No. 1:11-cv-00102 AWI JLT (PC)

12              Plaintiff,                         ORDER REQUIRING PLAINTIFF TO EITHER
                                                   NOTIFY THE COURT OF HIS WILLINGNESS
13        v.                                       TO PROCEED ON COGNIZABLE CLAIMS
                                                   OR FILE AN AMENDED COMPLAINT
14    JAMES A. YATES, et al.,
                                                   (Doc. 1)
15              Defendants.

16    _____/

17          Plaintiff is a state prisoner proceeding with a civil rights action pursuant to 42 U.S.C. § 1983.

18    Plaintiff is represented by counsel.  This proceeding was referred to the undersigned magistrate judge

19    in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 302.  Pending before the Court is Plaintiff's

20    complaint filed January 19, 2011.

21    I.    SCREENING

22          A.    Screening Requirement

23          The Court is required to review a case in which a prisoner seeks redress from a governmental

24    entity or officer.  28 U.S.C. § 1915A(a).  The Court must review the complaint and dismiss any portion

25    thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

26    monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  If the Court

27    determines the complaint fails to state a claim, leave to amend should be granted to the extent that the

28    deficiencies can be cured by amendment.  Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000).

                                                   1

1

**B.      Section 1983**

2

The Civil Rights Act under which this action was filed provides as follows:

3

Every person who, under color of [state law] . . . subjects, or causes to be subjected, any
citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

4

secured by the Constitution . . . shall be liable to the party injured in an action at law, suit
in equity, or other proper proceeding for redress.

5

6

42 U.S.C. § 1983.

7

To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred that (1)

8

plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that right acted

9

under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145,

10

1147 (9th Cir. 1989).  To warrant relief under § 1983, the plaintiff must allege and show that the

11

defendants' acts or omissions caused the deprivation of the plaintiff's constitutionally protected rights.

12

Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993).  "A person deprives another of a constitutional right,

13

within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative

14

acts, or omits to perform an act which he is legally required to do that causes the deprivation of which

15

[the plaintiff complains]."  Id.  There must be an actual causal connection or link between the actions

16

of each defendant and the deprivation alleged to have been suffered by the plaintiff.  Monell v. Dept. of

17

Social Services, 436 U.S. 658, 691-92 (1978) (citations omitted).

18

**C.      Rule 8(a)**

19

Complaints are governed by the notice pleading standard set forth in Federal Rule of Civil

20

Procedure 8(a), which provides in relevant part that:

21

A pleading that states a claim for relief must contain:

22

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court
already has jurisdiction and the claim needs no new jurisdictional support;

23

24

(2) a short and plain statement of the claim showing that the pleader is entitled to relief;
and

25

(3) a demand for the relief sought, which may include relief in the alternative or different
types of relief.

26

27

The Federal Rules of Civil Procedure adopt a flexible pleading policy.  Nevertheless, a complaint

28

must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  Bell

2

1   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

2   (1957)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

3   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"

4   Twombly, 550 U.S. at 555 (citations and quotations omitted).  The complaint "must contain sufficient

5   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

6   129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570).  Vague and

7   conclusory allegations are insufficient to state a claim under § 1983.  Ivey v. Board of Regents, 673 F.2d

8   266, 268 (9th Cir. 1982).

9   **II.      THE COMPLAINT**

10         Plaintiff claims that his constitutional rights were violated by prison officials at Pleasant Valley

11  State Prison ("PVSP").  Plaintiff specifically identifies the following prison officials as defendants to

12  this action: (1) Warden Yates; (2) Sergeant Gonzales; (3) Correctional Officer ("CO") Widlund; (4) CO

13  Gallegos; (5) CO Lopez; (6) Lieutenant Fogal; (7) Captain Shannon; (8) Nurse Hernandez; and (9) John

14  Does 1-20.  (Doc. 1, Compl., at 3-4.)

15         Plaintiff alleges as follows.  Plaintiff has been prescribed Prozac and Vistaril for anxiety and

16  depression.  The prescribing physician warned Plaintiff that he needed to take the correct dosages of the

17  medications daily, otherwise Plaintiff would suffer serious withdrawal symptoms.  On January 27, 2009,

18  Nurse Goolow notified Plaintiff that PVSP had run out of Prozac and that the next shipment was not

19  scheduled to arrive until the next day.  When Plaintiff still did not receive his prescribed Prozac the next

20  day, Plaintiff began to suffer withdrawal symptoms, including severe anxiety, nausea, and general

21  fatigue.  (Doc. 1 at 4-5.)

22         In the evening of January 28, 2009, Defendant Wildlund entered Plaintiff's cell to collect mail.

23  Defendant Widlund read an inmate appeal drafted by Plaintiff wherein Plaintiff requested immediate

24  medical attention due to his withdrawal symptoms.  Plaintiff pleaded with Defendant Widlund to deliver

25  the inmate appeal to the proper authorities.  However, Defendant Widlund walked away without taking

26  Plaintiff's inmate appeal.  Plaintiff called Defendant Gonzales for help a few hours later, but Defendant

27  Gonzales also ignored Plaintiff's complaints of illness.  Defendant Gonzales stated that he was going

28  home and did not have time to address Plaintiff's problems.  (Doc. 1 at 5.)

1      Plaintiff finally received Prozac on January 31, 2009.  When Plaintiff asked Nurse Garcia as to
2 the status of the next shipment of Prozac, the nurse responded that PVSP had "plenty of bags full of
3 Prozac."  As to Vistaril, however, PVSP's inventories expired and therefore Plaintiff was not provided
4 with Vistaril that day or the next.  On February 1, 2009, Plaintiff only received his prescribed Prozac.
5 (Doc. 1 at 6.)

6      On February 2, 2009, Plaintiff received neither medication.  Plaintiff complained to Defendant
7 Hernandez that he continued to feel sick and was still suffering from withdrawal symptoms.  Defendant
8 Hernandez responded that it was the afternoon nurse's job, not hers, to get prescriptions for Plaintiff.
9 Defendant Hernandez then walked over to Defendant Gallegos and pointed at Plaintiff.  Defendant
10 Gallegos shook his head and gave Plaintiff "a dirty look."  (Doc. 1 at 7.)

11      On February 3, 2009, Plaintiff suffered a seizure, followed by nausea, severe headaches, and
12 severe anxiety.  That evening, Defendants Hernandez and Widlund approached Plaintiff's cell and
13 provided Plaintiff with both Prozac and Vistaril.  When Plaintiff asked Defendant Hernandez why he
14 had not received his medications the prior day, Defendant Widlund replied, "Just shut the fuck up and
15 take your meds."  Defendant Widlund also called Plaintiff "mental."  Plaintiff responded, "Go fuck
16 yourself."  (Doc. 1 at 7-8.)

17      Defendant Widlund left the cell, only to soon return with Defendants Gonzales and Gallegos.
18 Defendant Gallegos tied Plaintiff's arms behind his back, placed Plaintiff on his stomach, and sat on
19 Plaintiff's back.  Defendant Widlund then proceeded to punch and kick Plaintiff in the face.  Plaintiff
20 did not resist.  During this entire time, Defendant Gonzales stood by and encouraged the attack.  As a
21 result of this incident, Plaintiff suffered a broken nose, damaged ribs, an injured shoulder, and cuts to
22 his face and neck.  (Doc. 1 at 8, 10.)

23      Plaintiff was then handcuffed and moved to a shower stall.  There, Defendants Widlund,
24 Gallegos, and Gonzales pepper-sprayed Plaintiff, aiming directly at Plaintiff's open wounds.
25 Throughout this time, the defendants refused to remove Plaintiff handcuffs or turn the water on to wash
26 the pepper spray off Plaintiff.  Plaintiff also heard one of the defendants comment that Plaintiff was
27 Persian.  Moreover, Plaintiff recalls that a few months prior, Plaintiff had informed Defendant Gonzales
28 that he was from Iran.  (Doc. 1 at 9.)

4

1    Defendant Lopez eventually turned the water on in the shower to wash the pepper spray off

2    Plaintiff, but only after Plaintiff begged him for at least thirty minutes.  Plaintiff was then taken to the

3    infirmary, but no staff were present.  Accordingly, Defendant Hernandez falsified a medical report, and

4    had Plaintiff moved to administrative segregation.  Plaintiff would not receive medical care until ten

5    days later.  (Doc. 1 at 9-10.)

6    Before Plaintiff had an interview conducted as to his injuries, Defendant Gonzales approached

7    Plaintiff and warned him of consequences if he commented on the physical altercation that took place

8    or filed a grievance.  Defendant Gonzales suggested that Plaintiff would lose privileges, be placed in

9    administrative segregation, face criminal prosecution, and would, in general, have an unbearable prison

10   experience.  Nevertheless, Plaintiff proceeded to file a grievance.  (Doc. 1 at 10, 20.)

11   The prison's subsequent investigation into the altercation revealed numerous questions and

12   inconsistencies regarding the events.  Defendants Fogal, Shannon, and Yates were made aware of these

13   inconsistencies, yet these defendants failed to take any remedial action or otherwise follow-up on the

14   investigation.  In the end, criminal charges were filed against Plaintiff, and Plaintiff was found guilty of

15   various disciplinary violations.  (Doc. 1 at 11-12, 20.)

16   Based on the above allegations, Plaintiff claims that: (1) Defendants Widlund, Lopez, Gonzales,

17   and Gallegos used excessive force against him in violation of the Eighth Amendment; (2) Defendants

18   Yates, Shannon, Fogal, Widlund, Gonzales, Lopez, Gallegos, and Hernandez provided Plaintiff

19   inadequate medical care in violation of the Eighth Amendment; (3) Defendants Widlund, Gonzales,

20   Gallegos, Lopez, and Hernandez violated Plaintiff's rights under the Equal Protection Clause of the

21   Fourteenth Amendment;(4) Defendants Widlund, Gonzales, Gallegos, and Lopez conspired to violate

22   Plaintiff's constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986; and (5) Defendants Yates,

23   Gonzales, Fogal, and Shannon retaliated against Plaintiff in violation of the First Amendment.  In terms

24   of relief, Plaintiff seeks monetary damages.  (Doc. 1 at 12-22.)

25   **III.    DISCUSSION**

26   **A.    Eighth Amendment – Excessive Force**

27   Plaintiff claims that Defendants Widlund, Lopez, Gonzales, and Gallegos used excessive force

28   against him.  "When prison officials use excessive force against prisoners, they violate the inmates'

5

Eighth Amendment right to be free from cruel and unusual punishment." <u>Clement v. Gomez</u>, 298 F.3d 898, 903 (9th Cir. 2002). In determining whether a prison official has used excessive force, "the core judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). Factors the Court may consider in making this determination include: (1) the extent of the injury; (2) the need for force; (3) the relationship between the need and the amount of force used; (4) the threat as reasonably perceived by prison officials; and (5) any efforts made by prison officials to temper the severity of a forceful response. <u>Id.</u> (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986)).

In this case, Plaintiff alleges that he and Defendant Widlund became embroiled in a verbal spat. In response, Defendant Widlund left and returned with Defendant Gallegos, who restrained and pinned Plaintiff to the ground. Defendant Widlund then proceeded to punch and kick Plaintiff in the face. Next, Defendants Widlund, Gonzales, and Gallegos moved Plaintiff to a shower stall, where they pepper-sprayed him. Defendant Lopez then refused to wash the pepper spray off of Plaintiff for over thirty minutes. Assuming these allegations to be true, as the Court must at this stage, it appears that the defendants applied force maliciously and sadistically for the very purpose of causing harm. As such, the Court finds that Plaintiff states cognizable excessive force claims against Defendants Widlund, Lopez, Gallegos, and Gonzales.

**B.      Eighth Amendment – Inadequate Medical Care**

Plaintiff claims that Defendants Widlund, Gonzales, Lopez, Gallegos, and Hernandez provided him inadequate medical care. To state a claim for the violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). In other words, the plaintiff must demonstrate: (1) an objectively serious medical need; and (2) a deliberately indifferent response by the defendant. <u>Conn v. City of Reno</u>, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)). A medical need is serious "if the failure to treat the [plaintiff's] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting <u>Estelle</u>, 429 U.S. at 104). A prison official acts with deliberate indifference if he knowingly fails to respond to a serious

6

1    medical need, thereby inflicting harm on the plaintiff.  Jett, 439 F.3d at 1096.  "Mere 'indifference,'

2    'negligence,' or 'medical malpractice' will not support his cause of action."  Broughton v. Cutter

3    Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

4                    **1.      Prescription Medications**

5            Plaintiff's prescriptions for Prozac and Vistaril appear to be serious medical needs.  According

6    to Plaintiff, a physician prescribed those medications to treat Plaintiff's severe anxiety and depression.

7    If Plaintiff does not receive his medication daily, he allegedly suffers from severe withdrawal symptoms

8    including anxiety, nausea, headaches, and fatigue.  Moreover, Plaintiff alleges that he suffered a seizure

9    because he was not receiving adequate medication.

10           Whether Plaintiff states a cognizable inadequate medical care claim against a defendant thus

11   hinges upon whether the defendant acted with deliberate indifference to Plaintiff's medication needs.

12   In regard to Defendants Widlund, the Court finds that Plaintiff has alleged facts sufficient to demonstrate

13   deliberate indifference.  Plaintiff alleges that Defendant Widlund was aware of his medication needs

14   after reading Plaintiff's inmate appeal requesting immediate medical attention.  Nevertheless, according

15   to Plaintiff, Defendant Widlund refused to deliver Plaintiff's appeal and simply walked away.  Based

16   on these allegations, Plaintiff appears to state a cognizable inadequate medical claim against Defendant

17   Widlund.

18           Plaintiff also alleges facts sufficient to show deliberate indifference on the part of Defendant

19   Hernandez.  According to Plaintiff, he informed Defendant Hernandez that he was feeling ill and was

20   suffering from severe withdrawal symptoms.  Despite this, Defendant Hernandez allegedly dismissed

21   Plaintiff's medication needs and walked away to talk to Defendant Gallegos.[1]  Even if it was true that

22   it was the afternoon nurse's job to retrieve Plaintiff's medications, Plaintiff may still be able to establish

23   deliberate indifference by showing that Defendant Hernandez should have taken other reasonable steps

24   to respond to Plaintiff's need for medication.  Accordingly, the Court finds the allegations sufficient to

25   state a cognizable claim against Defendant Hernandez.

26

27           [1]  It is unclear if Plaintiff is attempting to allege an inadequate medical care claim against Defendant Gallegos for
     failing to provide Plaintiff with medication.  To the extent that he is, the Court finds Plaintiff's allegations against Defendant
28   Gallegos insufficient to demonstrate deliberate indifference.  There is no indication as what was discussed between Defendant
     Hernandez and Defendant Gallegos.  It would therefore be entirely speculative to infer, from these facts, that Defendant
     Gallegos knew of and disregarded a substantial risk to Plaintiff's health and safety.

As to Defendant Gonzales, however, the Court finds Plaintiff's allegations insufficient to demonstrate deliberate indifference.  Plaintiff indicates that Defendant Gonzales refused to help him because it was time for Defendant Gonzales to go home.  Moreover, Plaintiff indicates that the prison nurses were the ones who were in charge of providing inmates with their medications.  (Doc. 1 at 4.) Thus, in the absence of facts to the contrary, it appears that Defendant Gonzales was simply not in a position to help Plaintiff obtain his medication.  At most, then, Defendant Gonzales was indifferent to Plaintiff's medical needs.  Mere indifference, however, is not actionable under § 1983.  Broughton, 622 F.2d at 460.

## 2.     Post-Altercation Treatment

Plaintiff alleges that as a result of the altercation, he suffered a broken nose, damaged ribs, an injured shoulder, and cuts to his face and neck.  Plaintiff also alleges that for an extended period of time, he remained awash in pepper spray.  Despite these injuries and despite Plaintiff's obvious need for medical treatment, Defendants Widlund, Gonzales, and Gallegos apparently failed to take any steps to ensure that Plaintiff received adequate medical attention. Moreover, Defendant Lopez allegedly allowed Plaintiff to remain soaked in pepper spray for at least thirty minutes, and Defendant Hernandez allegedly falsified medical records to make it appear as if Plaintiff had been treated when in fact he had not.  Based on these allegations, Plaintiff states cognizable claims for inadequate medical care against Defendants Widlund, Gonzales, Lopez, Gallegos, and Hernandez.

## C.     Fourteenth Amendment – Equal Protection

Plaintiff claims that Defendants Widlund, Gonzales, Gallegos, Lopez, and Hernandez violated his right to equal protection under the law.  The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  A plaintiff may establish an equal protection claim by showing that he was intentionally discriminated against on the basis of his membership in a suspect class, such as race.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  If, however, the action in question does not involve a suspect classification, a plaintiff may also establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state

purpose. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Squaw Valley Development Co.</u> <u>v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir. 2004).  Under either theory, a plaintiff must "allege facts that are at least susceptible of an inference of discriminatory intent." <u>Byrd v. Maricopa County Sheriff's</u> <u>Dep't</u>, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting <u>Monteiro v. Temple Union High School Dist.</u>, 158 F.3d 1022, 1026 (9th Cir. 1998)).

Plaintiff's equal protection claims are anchored by his allegation that during the physical altercation, he heard one of the defendants say, "Yeah, he is one of those Middle Easterners, a Persian." Plaintiff also alleges that a few months prior, he told Defendant Gonzales that he was from Iran.  These loose allegations, however, are insufficient to state a cognizable equal protection claim.  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original)).  The fact that one of the defendants confirmed Plaintiff's ethnicity during the altercation does not demonstrate that either he or the other defendants acted with discriminatory intent.  In fact, the comments as to Plaintiff's ethnicity appear to have been made towards the end of the altercation and only *after* all the acts of alleged assault were already completed.  Thus, without the support of additional facts, Plaintiff's equal protection claims are simply speculative.  See <u>Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted).

**D.  Conspiracy Under §§ 1985 and 1986**

Plaintiff claims that Defendants Widlund, Gonzales, Gallegos, and Lopez conspired to violate his civil rights in violation of 42 U.S.C. § 1985.  "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 641 (9th Cir. 1980) (citations omitted).  "The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).  Here, as discussed above,

9

1  Plaintiff fails to allege facts demonstrating that the defendants acted with racial animus.  Accordingly,

2  Plaintiff fails to state a claim under § 1985(3).[2]

3        Plaintiff also claims that Defendants Widlund, Gonzales, Gallegos, and Lopez conspired to

4  violate his civil rights in violation of 42 U.S.C. § 1986.  "Section 1986 authorizes a remedy against state

5  actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985."

6  Cerrato v. S.F. Cmty. Coll. Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994).  "A claim can be stated under

7  [§] 1986 only if the complaint contains a valid claim under [§] 1985."  Karim-Panahi v. Los Angeles

8  Police Dept., 839 F.2d 621, 626 (9th Cir. 1988) (citations omitted).  Because Plaintiff does not allege

9  a valid claim under § 1985, Plaintiff also fails to state a cognizable claim under § 1986.

10        **E.**      **First Amendment – Retaliation**

11        Plaintiff claims that Defendant Gonzales retaliated against him.  Under the First Amendment,

12  prison officials may not retaliate against prisoners for initiating litigation or filing administrative

13  grievances.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  A viable claim of First

14  Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse

15  action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action

16  (4) chilled the inmate's exercise of his First Amendment rights, and (5) the adverse action did not

17  reasonably advance a legitimate penological purpose.  Id.

18        Here, Plaintiff alleges that Defendant Gonzales warned Plaintiff that if he proceeded with his

19  inmate grievance regarding the altercation, Defendant Gonzales would make sure that Plaintiff would

20  lose privileges, be placed in administrative segregation, and face criminal prosecution for his actions.

21  Despite these threats, Plaintiff moved forward with his inmate appeal.  Thus, in Plaintiff's view, the

22  subsequent disciplinary violations and criminal charges filed against him were retaliatory.  Plaintiff

23  alleges that these actions were taken for the sole purpose of chilling Plaintiff's protected conduct and

24  served no legitimate penological purpose.  Assuming these allegations to be true, the Court finds that

25  Plaintiff states a cognizable retaliation claim against Defendant Gonzales.

26  /////

27

28      [2]  Although Plaintiff does not specify which subsection of § 1985 he is proceeding under, the Court presumes that Plaintiff seek relief pursuant to § 1985(3), as the remaining subsections are clearly inapplicable to Plaintiff's allegations.  See 42 U.S.C. § 1985(2)-(3).

1    **F.      Supervisorial Liability**

2          Plaintiff identifies three defendants who primarily acted in a supervisorial capacity: Defendants

3    Yates, Fogal, and Shannon.  Supervisory personnel are generally not liable under § 1983 for the actions

4    of their employees under a theory of *respondeat superior*.  Monell, 436 U.S. at 691.  Therefore, when

5    a defendant holds a supervisory position, the causal link between him and the claimed constitutional

6    violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979).  In other

7    words,"[u]nder § 1983 a supervisor is only liable for his own acts.  Where the constitutional violations

8    were largely committed by subordinates the supervisor is liable only if he participated in or directed the

9    violations."  Humphries v. County of Los Angeles, 554 F.3d 1170, 1202 (9th Cir. 2009).

10         Here, Plaintiff alleges that Defendants Yates, Fogal, and Shannon violated his rights under the

11   First and Eighth Amendments because they implemented policies and customs that allowed his rights

12   to be violated.  It is true that "[s]upervisory liability exists even without overt personal participation in

13   the offensive act if supervisory officials implement a policy so deficient that the policy itself is a

14   repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v.

15   Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks and citation omitted).  However, in

16   this case, Plaintiff fails to identify any specific policy implemented by the defendants, let alone explain

17   how that policy served as the moving force for alleged constitutional violations.

18         In an apparent attempt to bolster his claims against Defendants Yates, Fogal, and Shannon,

19   Plaintiff also alleges that these defendants did not adequately supervise their subordinates, failed to

20   properly train their subordinates, and failed to remedy the alleged constitutional violations committed

21   by their subordinates.  These allegations, however, are vague and conclusory.  Plaintiff does not offer

22   facts demonstrating that these managerial failures were the product of deliberate indifference or

23   conscious choice.  Nor does Plaintiff establish a causal connection between the alleged supervisorial

24   deficiencies and the alleged constitutional violations of the defendants' subordinates.  See Canell v.

25   Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998) (to impose liability on a supervisor for failure to

26   adequately train, a plaintiff must demonstrate that the training was inadequate, the training was the

27   deliberate or conscious choice of the supervisor, and the training caused the alleged constitutional

28   violation).  Rather, it appears that Plaintiff is simply asserting vague allegations in an attempt to impose

liability under a dressed-up theory of *respondeat superior*.  Such cannot serve as the basis for liability under § 1983.  Monell, 436 U.S. at 691.

### G.     Leave to Amend

In sum, the Court finds that the complaint only states the following cognizable claims: (1) excessive force under the Eighth Amendment against Defendants Widlund, Gonzales, Gallegos, and Lopez; (2) inadequate medical care (prescription medication) under the Eighth Amendment against Defendants Widlund and Hernandez; (3) inadequate medical care (post-altercation treatment) under the Eighth Amendment against Defendants Widlund, Lopez, Gonzales, Gallegos, and Hernandez; and (4) retaliation under the First Amendment against Defendant Gonzales.

Plaintiff may therefore proceed in one of two ways.  First, Plaintiff may elect to serve the complaint and proceed only on those claims found cognizable by the Court in this order.  Second, Plaintiff may file an amended complaint, attempting to cure the deficiencies identified by the Court in this order.  See Lopez, 203 F.3d at 1127 ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citations and internal quotation marks omitted).  If Plaintiff elects to file an amended complaint, he is cautioned that he may not change the nature of this suit by adding new and unrelated claims.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  Plaintiff is also advised that once he files his amended complaint, his original pleadings are superceded and no longer serve any function in the case. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, the amended complaint must be "complete in itself without reference to the prior or superceded pleading."  Local Rule 220.  "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

## IV.     OTHER MATTERS

On January 20, 2011, the Court issued summons for all Defendants to file a response to the complaint in this action.  This was done in error.  Defendants will not be required to file a response until the Court has completed its screening of Plaintiff's pleadings and has authorized their service.  Thus, Defendants may disregard the summons issued in error on January 20, 2011.  The Court will direct the Clerk of the Court to vacate the summons.

1    **V.      CONCLUSION**

2         In accordance with the above, it is HEREBY ORDERED that:

3         1.      Within thirty (30) days from the date of service of this order, Plaintiff shall either:

4                 a.      Notify the Court in writing that he wishes to serve the complaint and proceed

5                         only on those claims found cognizable by the Court in this order; or

6                 b.      File an amended complaint attempting to cure the deficiencies identified by the

7                         Court in this order.

8         2.      Plaintiff is firmly cautioned that failure to comply with this order will result in a

9                 recommendation that this case be dismissed.

10        3.      The Clerk of the Court is directed to vacate the summons issued for Defendants on

11                January 20, 2011.

12   IT IS SO ORDERED.

13   Dated:   **January 24, 2011**                              **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13